IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KATHY WARENECKI         :       CIVIL ACTION
                                 :
        v.               :
                                 :
CITY OF PHILADELPHIA, ET AL.   :       NO.  10-1450

**MEMORANDUM**

**Padova, J.**                                       **November 3, 2010**

       Plaintiff Kathy Warenecki brings this action for employment discrimination pursuant to Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, and 42 U.S.C. § 1983 arising from

her termination as a medical assistant for the City of Philadelphia Department of Public Health ("the

Health Department").  Plaintiff asserts claims against the City of Philadelphia ("the City") and her

former supervisors, Sharon McAfee and Darnell Wilkerson. Presently before the Court is

Defendants' Motion for Summary Judgment.  For the following reasons, the Motion is granted in

part and denied in part.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

       Beginning in 2003, Plaintiff was employed as a medical assistant at the Health Department,

in the Ambulatory Health Services Unit ("AHS").  (Defs. Statement of Material Facts ¶ 1.)[1]  She

was, at all relevant times, assigned to Health Center #6 ("the Health Center").  (Id. ¶ 3.)  In 2007,

Defendant Sharon McAfee, Health Care Coordinator for the Health Center, became Warenecki's

immediate supervisor.  (Id. ¶ 5.)  McAfee is African American.  (Id. ¶ 6.)  Defendant Darnell

Wilkerson, Director of the Health Center, is also African American.  (Id. ¶ 7; Wilkerson Decl. ¶ 1.)

Plaintiff is white.  (Defs. Statement of Material Facts ¶ 4.)

---

[1]We have relied only on those statements of material facts that are undisputed by Plaintiff.

On Tuesday, May 13, 2008, AHS employee Tara Cameron drew Warenecki's blood in the laboratory at the Health Center, while both employees were on duty ("the May 13 incident"). (Id. ¶ 11.) McAfee observed Cameron drawing Warenecki's blood, and held a meeting in her office, with Cameron and Warenecki, to discuss the inappropriateness and ethical implications of having personal blood work done during their shifts. (Id. ¶¶ 12-13.) At that meeting, Warenecki stated that many AHS employees had blood and urine work done at the Health Center, and asked McAfee if she was singling Warenecki out because of her race. (Pl.'s Dep. at 29-30, 36-37.) McAfee stated that she was offended, and that she was not racist. (Id. at 30.) On May 16, 2008, Warenecki received a memorandum from McAfee ("the May 16 memorandum"), explaining that having her blood drawn at work was unprofessional. (Defs. Statement of Material Facts ¶ 14; Def. Ex. 5.) In addition, for approximately two weeks following the May 13 incident, McAfee "would constantly pull [Warenecki] to the side" and talk about the May 13 incident and Plaintiff's allegation of racism. (Pl.'s Dep. at 39-40.)

Warenecki, and her representatives from the District Council #33 Union, requested a meeting with McAfee and Wilkerson to discuss the May 16 memorandum. (Defs. Statement of Material Facts ¶ 16.) On June 17, 2008, Warenecki, along with Union representatives Linda Lee, Evon Sutton, and Adele Roberts, attended a meeting ("the June 17 meeting") with McAfee and Wilkerson. (Id. ¶¶ 17-18.) At the June 17 meeting, Warenecki stated that it was common practice for AHS employees and their families to have blood and urine work done at the Health Center and accused McAfee of singling her out on the basis of her race. (Id. ¶¶ 18, 20.) Warenecki stated that she had documents to prove that AHS employees and their families had lab work performed at the Health Center and referred to a manilla envelope that she had brought with her. (Id. ¶ 24.) Warenecki also stated that she had obtained the gonorrhea and chlamydia test results of one of her co-workers. (Id.

¶ 21; Pl.'s Dep. at 79-80.)

According to the Defendants, Warenecki then opened the envelope, removed her co-worker's gonorrhea and chlamydia test results, and slid the document across the table so that the co-worker's name and test results were clearly visible. (Def. Ex. 6; McAfee Decl. ¶ 19; Wilkerson Decl. ¶ 14; Roberts Decl. ¶ 8.) Warenecki denies removing any papers from the envelope or passing around any document with any employee's health information. (Pl.'s Dep. at 62-64, 79.) She maintains that she was bluffing when she referred to the envelope, which contained only her personal mortgage papers. (Id. at 60-62.) Warenecki also maintains that after the meeting, Wilkerson asked to see her in his office, where he stated that she "had a nerve to complain, because, you know, it's a well-known fact that, you know, that black people have been discriminated [sic] for hundreds of years . . . ." (Id. at 56-57.)

Wilkerson reported the events of the June 17 meeting to Dr. Thomas Storey, Director of AHS. (Defs. Statement of Material Facts ¶ 26.) Dr. Storey advised Wilkerson to reclaim the medical records which Warenecki claimed to have brought to the meeting. (Id. ¶ 27.) When Wilkerson asked Warenecki for the records, she told him that the envelope contained only mortgage papers and that she had been bluffing at the meeting. (Id. ¶ 29.) Wilkerson reported this information to Dr. Storey, who stated that he would handle the matter. (Id. ¶ 30.) Dr. Storey determined that Warenecki's actions violated AHS's policies and provisions of the Health Insurance Portability and Accountability Act ("HIPAA") that relate to the privacy of certain health information. (Id. ¶¶ 36-37.) He recommended to Philadelphia Department of Public Health Commissioner Donald Schwarz that Warenecki be suspended for thirty days pending dismissal. (Id.) Dr. Schwarz approved the recommendation. (Id.)

On July 21, 2008, McAfee, through Wilkerson, sent Warenecki a memorandum ("the July

21st memorandum"), explaining that her actions at the meeting were considered a violation of federal law and AHS policy. (Def. Ex. 6.) The July 21st memorandum also stated that McAfee and Wilkerson recommended that Warenecki be suspended for thirty days with intent to dismiss. (Id.) On July 28, 2008, the Disciplinary Panel of the Health Department sent Warenecki another memorandum ("the July 28th memorandum"), notifying her that she would be suspended for thirty days pending dismissal. (Def. Ex. 12.) Warenecki immediately requested an appeal. (Id.) Warenecki was served with a formal Notice of Suspension and a Notice of Intention to Dismiss on September 5, 2008. (Def. Exs. 13, 14.) She was served with a formal Notice of Dismissal on September 17, 2008. (Def. Ex. 17.)

The Complaint asserts claims against the City, McAfee, and Wilkerson for the deprivation of Plaintiff's Fourteenth Amendment right to equal protection of the law pursuant to 42 U.S.C. § 1983 (Counts I, II, III). The Complaint also asserts claims against the City pursuant to Title VII. The Title VII claims assert that the City of Philadelphia discriminated against Warenecki on the basis of race, in reprimanding and terminating her (Count V), and that the City retaliated against Warenecki, in suspending and terminating her, because she objected to the discriminatory treatment to which she and other white employees were subjected at AHS (Count VI).[2] Defendants have moved for summary judgment on all counts on the ground that the record before the Court does not contain sufficient evidence to support any of Warenecki's claims.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials

---

[2]Count IV of the Complaint asserted a claim against Dr. Donald Schwarz, Commissioner of AHS, pursuant to 18 U.S.C. § 1983. Plaintiff has withdrawn this claim. (Pl.'s Mem. at 1.) Therefore, we dismiss as moot Defendants' Motion for Summary Judgment as to Count IV.

on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). An issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). That is, summary judgment is appropriate if the non-moving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"'While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.'" Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005)). "Evidence that is merely colorable or not significantly probative is insufficient to create a genuine issue of material fact for trial." West v. Lincoln Benefit Life Co., 509 F.3d 160, 172 (3d Cir. 2007) (citing Anderson, 477 U.S. at 248, and El v. Southeastern Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007)).

## III.    DISCUSSION

### A.    The Discrimination Claims

In Counts II, III, and V, Plaintiff asserts discrimination claims pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq*.

Section 1983 provides a remedy against "[e]very person" who, under the color of state law, deprives another of his rights arising under the Constitution or federal law.  42 U.S.C. § 1983.  "By its terms, of course, the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere."  City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985) (plurality opinion) (citing Baker v. McCollan, 443 U.S. 137, 140, 144 n.3 (1979)).  "Thus, '[t]o establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States . . . .'"  Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995) (alterations in original) (quoting Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993)).

The Fourteenth Amendment states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  This is "essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)).  "'To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination.  They must demonstrate that they received different treatment from that received by other individuals similarly situated.'"  Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)).

Title VII makes it unlawful for an employer to discharge or "otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To bring a successful claim under Title VII, a plaintiff must prove that "an employer has 'treated [a] particular person less favorably than others because of' a protected trait . . . [and] 'that the defendant had a discriminatory intent or motive' . . . ." Ricci v. DeStefano, 129 S. Ct. 2658, 2672 (2009) (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 985-986 (1988)).

In the absence of direct evidence,[3] § 1983 claims and Title VII claims alleging race discrimination are analyzed together under the burden-shifting framework established by McDonnell Douglas v. Green, 411 U.S. 792 (1973). See Kant v. Seton Hall Univ., 289 F. App'x. 564, 566 (3d Cir. 2008) (Title VII); Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997) ("Our application of the McDonnell Douglas-Burdine framework is applicable to [plaintiff's] allegation of racial discrimination under 42 U.S.C. §§ 1981 and 1983." (footnotes omitted) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 n.1 (1993))); see also Foxworth v. Pennsylvania State Police, 402 F. Supp. 2d 523, 531 (E.D. Pa. 2005) (noting that "caselaw has established that this same burden-shifting approach used in Title VII claims is also applied when analyzing . . . racially based employment-related equal protection claims under 42 U.S.C. § 1983" (listing cases)). The showings required to establish the two claims are "identical." Wood v. Univ. of Pittsburgh, No. 09-4469, 2010 WL 3705997, at *4 (3d Cir. Sept. 23, 2010) (citing Stewart, 120 F.3d at 432).

Under the McDonnell Douglas framework, the plaintiff "bears the initial burden of establishing a prima facie case by a preponderance of the evidence." Sarullo v. United States Postal

_____

[3] Plaintiff concedes that she has not provided direct evidence of discrimination. (Pl.'s Mem. at 6.)

Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citation omitted). Ordinarily, to establish a prima facie case, the plaintiff must show "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) . . . circumstances that raise an inference of discriminatory action . . . ." Id. The United States Court of Appeals for the Third Circuit has modified the first element of the prima facie case for discrimination claims brought by non-minorities, and held that "all that should be required to establish a prima facie case . . . is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others *based upon a trait that is protected* under Title VII." Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1998) (emphasis added) (citing United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)); see also Jakimowicz v. City of Philadelphia, No. 07-3327, 2010 WL 2649890, at *3 (E.D. Pa. June 30, 2010) (stating that the Third Circuit, in Iadimarco, "recognized the need to adapt the first prong of the prima facie test in reverse discrimination cases" and offered its modified standard "[i]n lieu of" the first element of the prima facie case). Thus, in order to establish a prima facie case of employment discrimination under Title VII, and under § 1983, a non-minority plaintiff must show (1) he or she was qualified for the position in question, (2) he or she suffered an adverse employment action, and (3) the evidence is adequate to create an inference that the adverse employment action was based on a trait protected by Title VII. See Mosca v. Cole, 384 F. Supp. 2d 757, 765 (D.N.J. 2005).

"When a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Sarullo, 352 F.3d at 797 (quoting McDonnell Douglas, 411 U.S. at 802). If the defendant does so,

the burden shifts back to the plaintiff, who "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perksie, 32 F.3d 759, 764 (3d Cir. 1994).

Plaintiff asserts two claims of discrimination. First, she claims that McAfee and the City discriminated against her by reprimanding her for having her blood drawn at work, even though it was common practice at the Health Center. Second, she claims that McAfee, Wilkerson and the City discriminated against her by terminating her. Defendants argue that they are entitled to summary judgment on both of Plaintiff's discrimination claims because Plaintiff has not produced evidence adequate to establish a prima facie case of discrimination with respect to either the reprimands or her termination.

1.    The Reprimands

Plaintiff asserts that she was reprimanded for the May 13 incident in two ways. The Complaint alleges that she was verbally reprimanded by McAfee on May 13 and during the two weeks subsequent to that incident. (Compl. ¶¶ 14, 15.) In her Response to the Motion for Summary Judgment, Plaintiff also refers to the May 16 memorandum. (Pl.'s Mem. at 2.)

Defendants do not contest that Plaintiff has established the first element of a prima facie case of discrimination with respect to this claim. They concede that Warenecki was employed as a medical assistant with AHS for over five years, and that McAfee never issued her a poor performance evaluation. (Defs. Statement of Material Facts ¶¶ 1, 42, 52.)

In order to establish the second element, Plaintiff must show that either the verbal reprimands or the May 16 memorandum constituted an adverse employment action. <u>Sarullo</u>, 352 at 797; <u>Jones v. City of Wilmington</u>, No. 00-952-KAJ, 2004 WL 1534778, at *6 (D. Del. June 14, 2004). An adverse employment action is that which affects the employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a). "[U]nsubstantiated oral reprimands and unnecessary derogatory comments . . . do not rise to the level of . . . adverse employment action." <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1300 (3d Cir. 2006) (quotation marks omitted), *overruled in part on other grounds by* <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006). Plaintiff has not produced any evidence that the verbal reprimands affected the compensation, terms, conditions, or privileges of her employment in any way. Accordingly, we conclude that the verbal reprimands did not constitute adverse employment action.

Job performance memoranda do not constitute adverse employment action unless they result in formal discipline or have some other tangible effect on the recipient's employment. <u>See</u> <u>Shesko v. City of Coatesville</u>, 292 F. Supp. 2d 719, 727 (E.D. Pa. 2003) ("[T]he written reprimand issue to Plaintiff . . . was actually termed a Performance Counseling, [and] resulted in no formal discipline . . . . The written reprimand, therefore, cannot be deemed to be an adverse employment action.") (quotation marks omitted); <u>Hay v. GMAC Mortg. Corp.</u>, No. 01-1030, 2003 WL 22133801, at *6 (E.D. Pa. Sept. 15, 2003) ("Even a poor performance rating does not give rise to an adverse employment action unless it has a tangible effect on recipient's employment."); <u>see also</u> <u>Davis v. Town of Lake Park, Fla.</u>, 245 F.3d 1232, 1241 (11th Cir. 2001) (noting that "courts are wisely reluctant to treat job performance memoranda as actionable under Title VII when they do not trigger

any more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline"). Here, Plaintiff admits that the May 16 memorandum was not "a write-up." (Pl.'s Dep. at 29, 70.) McAfee confirms that "[t]he memorandum was not a form of discipline, and Ms. Warenecki was not disciplined for her behavior on May 13, 2008." (McAfee Decl. ¶ 13.) Indeed, Warenecki was never disciplined while she was an employee of the Health Department. (Pl.'s Dep. at 13.) Accordingly, we conclude that the May 16 memorandum was not an adverse employment action.

Since we have determined that Plaintiff has not satisfied the second element of a prima facie case of discrimination with respect to the reprimands, we need not examine whether there is evidence that would create an inference that Plaintiff was reprimanded on account of her race. We conclude that Plaintiff has failed to establish a prima facie case of discrimination with respect to the reprimands for the May 13 incident.

### 2.     The Termination

As we noted above, Defendants do not dispute Plaintiff's qualifications for her job. In addition, there is no question that termination is an adverse employment action. See Griesbaum v. Aventis Pharm., 259 F. App'x. 459, 470 (3d Cir. 2007) (noting that "it is hard to understand how any employment action could be more adverse than a termination of employment"). Consequently, in order to establish a prima facie case of discrimination with respect to her termination, Plaintiff must show either that similarly situated individuals were not terminated or that the circumstances of Plaintiff's termination support an inference of discrimination. Cubbage v. Bloomberg, L.P., No. 05-2989, 2010 WL 3488619, at *18 (E.D. Pa. Aug. 31, 2010); see also Sarullo, 352 F.3d at 797;

Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933, 939 (3d Cir. 1997).[4]

To be deemed similarly situated, "the 'comparators' that an employment Plaintiff relies upon must be individuals [who] engaged in the same conduct as Plaintiff, and [who] shared in common all relevant aspects of [Plaintiff's] employment." Fayewicz v. Redner's Markets, Inc., No. 09-2596, 2010 WL 1644626, at *9 (E.D. Pa. Apr. 23, 2010) (citing inter alia Red v. Potter, 211 F. App'x 82, 84 (3d Cir. 2006)). Defendants argue that Plaintiff has failed to identify similarly situated individuals who were treated differently because she "has not produced any evidence of any other City employee who revealed a patient's lab results and led her supervisors to believe that she had further confidential information and who was not dismissed." (Defs. Mem. at 7.)

---

[4]There is some support for the proposition that a plaintiff must present evidence of similarly situated persons who were treated less favorably than she in order to establish a § 1983 claim for a denial of equal protection. See Renchenski v. Williams, -- F.3d --, No. 07-3530, 2010 WL 3835217, at *17 (3d Cir. Oct. 4, 2010) (citing Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003); Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd of Educ., 587 F.3d 176, 196 (3d Cir. 2009); Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002) (citations omitted); Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 151 (3d Cir. 2005) (citation omitted). The Third Circuit has relaxed this requirement in the Title VII context. See Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 355-56 ("While some of our prior cases may have given the impression that 'replacement by someone outside the plaintiff's class' is a requirement for the prima facie case, they have not so held, and Supreme Court precedent such as McDonnell Douglas, Teamsters, and O'Connor clearly require only 'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'" (quoting O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996))); see also Matczak, 136 F.3d at 939 (Under the Americans with Disabilities Act, 42 U.S.C. § 12101, et. seq., "favorable treatment outside the protected class is an 'alternative' element to a prima facie case . . . [which] can be present but by no means must be present.").

In this case, we need not decide whether a plaintiff must produce evidence of similarly situated persons who were treated more favorably than she in order to withstand summary judgment on a § 1983 claim alleging a violation of equal protection. Even if such evidence is not required, we conclude that Plaintiff has failed to satisfy the alternative requirement, that is, she has failed to produce "evidence adequate to create an inference that [her] employment decision[s] w[ere] based on an illegal discriminatory criterion." Pivirotto, 191 F.3d at 356 (quotation omitted).

Warenecki testified that she did not reveal a co-worker's confidential medical records at the June 17 meeting. (Pl.'s Dep. at 62-64, 79.) Evon Sutton, one of Warenecki's union representatives testified that Warenecki "absolutely did not do that." (Sutton Dep. at 16.) On the other hand, Adele Roberts, another of Warenecki's union representatives, as well as McAfee and Wilkerson, testified that she did pass around a confidential lab slip, and that her co-worker's name and type of test were clearly identifiable on the document. (Roberts Decl. ¶ 8; McAfee Decl. ¶ 19; Wilkerson Decl. ¶ 14). Since we may not "resolve factual disputes or make credibility determinations, and [as we] must view facts and inferences in the light most favorable to the party opposing the motion," we must assume that Warenecki did not pass around confidential health records at the June 17 meeting. Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995) (citation omitted). However, it is undisputed that Plaintiff led her supervisors to believe that she was in possession of confidential health records belonging to her co-workers. (Defs. Statement of Material Facts ¶ 21; Pl.'s Dep. at 62, 67.) Therefore, for purposes of our equal protection analysis, a person similarly situated would be a person who led her supervisors to believe that she had committed a violation of the employer's policies and of federal law. Plaintiff has produced no evidence relating to the employment status of such employees. Accordingly, we conclude that Plaintiff has failed to establish that similarly situated individuals were not terminated.

In the alternative, Plaintiff may establish the fourth element of her prima facie case by producing other evidence adequate to support an inference of discrimination. Matczak, 136 F.3d at 939. However, "the plaintiff cannot rely on unsupported assertions [or] speculation" to create an inference of discrimination. Turgeon v. Marriott Hotel Servs., Inc., No. 99-4401, 2000 WL

1887532, at *6 (E.D. Pa. Dec. 27, 2000) (citing Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 252 (3d Cir. 1999)).

Plaintiff relies primarily on her own testimony concerning experiences in which she believes McAfee treated her less favorably than nonwhite employees. She testified that, in 2007-08, McAfee criticized white nurses for their hair and attire (Pl.'s Dep. at 46-47), but has presented no evidence that McAfee did not similarly criticize nonwhite nurses. Warenecki also testified that no white nurses passed the probation period after McAfee took over as supervisor in 2007 (id. at 46), but has supplied no evidence as to the pass rates of nonwhite nurses.[5] Warenecki also testified that McAfee spoke to her about arriving late while two African American employees, who also had arrived late, were sitting at their desks eating cereal (id. at 49-50), but failed to submit evidence that McAfee did not also speak to the employees eating cereal at their desks. Moreover, Plaintiff admitted that McAfee did not write her up, or criticize her in any other way, for arriving late. (Id. at 49.) Warenecki testified that McAfee once mentioned to her that she should not carry her cell phone in her pocket, when it was turned on and set to vibrate, and that an African American employee wore a blue tooth (id. at 50-51), but she supplied no evidence that McAfee did not mention the policy against cell phones to the employee who wore the blue tooth.

Plaintiff also testified that shortly after the June 17 meeting, Wilkerson told her that she "had a nerve to complain, because, you know, it's a well-known fact that, you know, that black people

---

[5] The record establishes that only two white nurses failed to pass probationary periods between 2007 and 2010. (Cameron Aff. ¶ 10.) The Health Department explained that both nurses had trouble taking blood pressure readings. (Id.) Moreover, there is no evidence that McAfee, or anyone else involved in Plaintiff's termination, had anything to do with these decisions.

have been discriminated for hundreds of years . . . ." (Pl.'s Dep. at 56). This statement may reflect a lack of concern for discrimination against nonwhites and a discomfort with discrimination allegations by white employees,[6] but Plaintiff has failed to explain how it supports the further inference that Wilkerson recommended Plaintiff's termination because he harbored racial animus against whites.

Plaintiff also relies on evidence supplied by Cameron, who has related instances in which she believes white employees at the Health Center were treated less favorably than nonwhite employees. Cameron had a fixed lunch time, while nonwhites on staff could vary their lunch time. (Cameron Aff. ¶ 11.) In addition, Dr. Khan, who is of Indian descent, brought his son to work to shadow Wilkerson, and Cameron's request that her daughter be allowed to do the same subsequently was denied. (Id. ¶ 12.) McAfee and an African American employee received tuition assistance from the Health Department, and Cameron's request for the same benefit was denied. (Id. ¶ 13.) This evidence has little if anything to do with Plaintiff's termination. Our inquiry is whether Plaintiff's "termination occurred under circumstances giving rise to an inference of discrimination." Wallace v. Federated Dept. Stores, No. 05-4204, 2009 WL 440346, at *3 (E.D. Pa. Feb. 19, 2009). Because we focus on the circumstances of termination, "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight . . . ." Martinez v. Fox Broadcasting Co., No. 06-4537, 2008 WL 4425099, at *5 (E.D. Pa. Sept. 30, 2008) (quoting Pivirotto, 191 F.3d at 359); see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (stating that Title VII is not a "general civility code" for the workplace and that complaints attacking

---

[6] See supra at 22.

"the ordinary tribulations of the workplace" do not state a claim under Title VII (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) and B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992))). There is no evidence on the record that McAfee, or anyone else involved in Plaintiff's termination, had any control over decisions about whether employees could vary their lunch times, whose children could shadow AHS employees, and which employees were awarded tuition assistance.

It is also significant that the decision to terminate Plaintiff was made by two members of her racial group. Commissioner Schwarz made the final decision to terminate Plaintiff, based on the recommendation of Dr. Storey. (Defs. Statement of Material Facts ¶ 37.) Both Commissioner Schwarz and Dr. Storey, like Plaintiff, are white. (Id. ¶ 10.)[7] "[T]he race of the individuals responsible for an adverse employment decision 'is certainly relevant . . .'" Coulton v. Univ. of Pa., No. 05-1446, 2006 WL 759701, at *6 (E.D. Pa. Mar. 21, 2006) (quoting Iadimarco, 190 F.3d at 156). Where the person responsible for Plaintiff's termination was a member of Plaintiff's racial group, that fact weighs against an inference of discrimination. See, e.g., Coulton, 2006 WL 759701, at *6 (concluding that a Caucasian Plaintiff had failed to establish a prima facie case of reverse discrimination in part because "several of the administrators who supported Plaintiff's termination . . . were Caucasian"); Turgeon, 2000 WL 1887532, at *8 ("Lastly, Hines, who was white, made the final decision to terminate Plaintiff [who also was white]. Therefore, Plaintiff has failed to establish a prima facie case of discrimination.").

---

[7] Defendants represented in their Memorandum of Law that Dr. Storey is white. (Defs. Mem. at 15.) Plaintiff does not dispute this representation in her Response. The record itself is devoid of any indication of his race.

Accordingly, we conclude that there is no genuine issue of material fact as to whether the circumstances of Plaintiff's termination give rise to an inference of discrimination. They do not. Plaintiff relies on unsupported allegations and speculation, fails to provide evidence relating to her termination, and concedes that the individual responsible for her termination was a member of her racial group. Moreover, Plaintiff has not produced evidence of similarly situated persons who received better treatment. We conclude that Plaintiff has not established a prima facie case of discrimination with respect to her termination.

As Plaintiff has not established a prima facie case of discrimination with respect to the reprimands or her termination, we conclude that Defendants are entitled to judgment as a matter of law on Plaintiff's discrimination claims under Title VII and § 1983. Therefore, we grant Defendants' Motion for Summary Judgment as to Counts II, III, and V.

B.      The Monell Claim

In Count I, Plaintiff asserts a claim against the City of Philadelphia pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Plaintiff claims that the City of Philadelphia failed adequately to train and supervise her superiors at Health Center #6, and argues that the City's failures to train and supervise caused the reprimands and the termination she alleges to be unconstitutional. Defendants argue that Plaintiff lacks sufficient evidence to support this claim. "[P]roper analysis requires [the Court] to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and if so, (2) whether the city is responsible for that violation." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992) (citations omitted); see also Searles v. Southeastern Pa. Transp. Auth., 990 F.2d

789, 791 (3d Cir. 1993). Because we conclude that Warenecki's reprimands and termination did not violate the Equal Protection Clause, we need not reach the question of the City's liability. Plaintiff's failure to supply evidence that she was deprived of a constitutional right with respect to her reprimands and termination "forecloses [her] ability to establish municipal liability against [the City] for the same conduct." Thomas v. Bd. of Educ., 467 F. Supp. 2d 483, 492 (W.D. Pa. 2006) (citations omitted).

Accordingly, we conclude that Defendants are entitled to judgment as a matter of law on Plaintiff's Monell claim. Therefore, we grant Defendants' Motion for Summary Judgment as to Count I.

C.       The Retaliation Claim

In Count VI, Plaintiff asserts a claim against the City of Philadelphia pursuant to Title VII. She claims that the City terminated her in retaliation for her accusing her supervisors of racial discrimination at the June 17 meeting. Defendants argue that they are entitled to summary judgment with respect to this claim because Plaintiff cannot establish a prima facie case of retaliation and because the City had a legitimate, non-retaliatory reason for her termination.

In the absence of direct evidence, we analyze a Title VII retaliation claim under the McDonnell Douglas framework. Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006). "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" Id. (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386

(3d Cir. 1995)). To satisfy the first element the employee must either "participate in certain Title VII proceedings (the participation clause) [or] oppose discrimination made unlawful under Title VII (the opposition clause)." Moore, 461 F.3d at 341. "Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." Id. (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) and Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996)). To satisfy the second element, a plaintiff "must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). To satisfy the third element, "a plaintiff must show a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 341-42. We examine "the record as a whole" to determine if there is a causal connection between the protected activity and the adverse employment action. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000). There are "two primary ways to substantiate a causal connection between the protected activity and an adverse employment action: showing that the temporal proximity between the two is 'unusually suggestive,' or pointing to an 'ongoing antagonism' between the plaintiff and defendant." Gladysiewski v. Allegheny Energy, No. 09-4680, 2010 WL 3622446, at *2 (3d Cir. Sept. 20, 2010) (quoting Farrell, 206 F.3d at 280-81).

If the plaintiff establishes a prima facie case of retaliation, "the familiar McDonnell Douglas

approach applies in which 'the burden shifts to the employer to advance a legitimate, non-retaliatory reason' for its conduct . . . ." Moore, 461 F.3d at 342 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)). If the employer proffers such an explanation, the burden shifts back to the plaintiff, who "'must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" Id. (quoting Krouse, 126 F.3d at 500-01).

        1.    Prima Facie Case

Defendants do not challenge Plaintiff's ability to satisfy the first and second elements of her prima facie case. It is undisputed that Warenecki accused her supervisors of racial discrimination at the June 17 meeting (Defs. Statement of Material Facts ¶ 18),[8] and that Warenecki subsequently was terminated.[9] Defendants argue that Warenecki has failed to satisfy the third element because she cannot establish a causal link between her opposition to the alleged discrimination and her termination. We disagree.

"A showing of 'unusually suggestive' temporal proximity between the protected activity and

---

[8] While we have concluded that the verbal reprimands and the May 16 memorandum did not constitute adverse employment action under Title VII, "'a plaintiff need not prove the merits of the underlying discrimination complaint, but only that [s]he was acting under a good faith, reasonable belief that a violation existed.'" Aman, 85 F.3d at 1085 (quoting Griffiths v. Cigna Corp., 988 F.2d 457. 468 (3d Cir. 1993)); see also Aman, 85 F.3d at 1085 ("[P]rotesting what an employee believes in good faith to be a discriminatory practice is clearly protected conduct."). "It is therefore of no moment that the incidents she complained of, individually or collectively, did not rise to the level of . . . discrimination." Brown-Baumbach v. B&B Auto., Inc., No. 09-3962, 2010 WL 2710543, at *14 (E.D. Pa. July 7, 2010).

[9] "[T]ermination clearly fulfills the second prong of the prima facie case for a retaliation claim." Abramson v. William Paterson Coll., 260 F.3d 265, 288 (3d Cir. 2001).

the adverse action can be sufficient" to show a causal link. Schlegel v. Koteski, 307 F. App'x 657, 661 (3d Cir. 2009) (quoting Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 369 (3d Cir. 2008)). Warenecki voiced her opposition to allegedly discriminatory practices at the meeting on June 17, 2008. (Defs. Statement of Material Facts ¶¶ 17-18.) On July 21, she received a memorandum from McAfee, sent through Wilkerson, stating that they were recommending suspension pending dismissal. (Def. Ex. 6.) Accordingly, approximately five weeks passed between Warenecki's protected activity and the first instance of adverse employment action.[10]

The Third Circuit has "set no parameters" and encourages district courts to "decide[] in the context of the particular circumstances" whether the "temporal proximity . . . provides an evidentiary basis from which an inference can be drawn." Kachmar v. SunGuard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997). Generally, a period of several months between the protected activity and the adverse employment action is insufficient to create a causal inference. See, e.g., Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007) (five months insufficient); Bailey v. Commerce Nat'l Ins. Servs., Inc., 267 F. App'x. 167, 170 (3d Cir. 2008) (four months insufficient); Scheer v. Motorola, Inc., No. 09-209, 2010 WL 1878265, at *17 (E.D. Pa. May 10, 2010) (ten months insufficient). A period of

_____

[10] In a retaliation claim, Plaintiff need only show that "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Moore, 461 F.3d at 341 (citation omitted). We conclude that a memorandum from one's immediate supervisors recommending suspension pending dismissal constitutes adverse employment action for purposes of a Title VII retaliation claim. The fact that Warenecki subsequently was terminated only strengthens this conclusion. See Seybert v. International Group, Inc., No. 07-3333, 2009 WL 722291, at *22 (E.D. Pa. Mar. 18, 2009) ("Whether an action is materially adverse will often depend 'on a constellation of surrounding circumstances, expectations, and relationships . . . .'" (quoting Burlington Northern, 548 U.S. at 69)).

only six weeks, on the other hand, may be sufficient to show causation.  See, e.g., Marra v. Phila. Housing Auth., 497 F.3d 286, 306 (3d Cir. 2007) (six weeks sufficient).

Here, approximately five weeks passed between Warenecki's protected activity and the July 21st memorandum.  Bearing in mind that, on summary judgment, we "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor," Abramson v. William Paterson Coll., 260 F.3d 265, 276 (3d Cir. 2001) (quotation omitted), we conclude that the temporal proximity of Warenecki's protected activity and the first instance of adverse employment action is sufficient to establish a causal link.

In addition to considering temporal proximity, we also must "make the more generalized inquiry into whether [the plaintiff's] protected activity was the likely reason for her termination." Kachmar, 109 F.3d at 179.  Warenecki relies on her testimony that, shortly after the June 17 meeting, Wilkerson told Plaintiff that she "had a nerve to complain, because, you know, it's a well-known fact that, you know, that black people have been discriminated for hundreds of years." (Pl.'s Dep. at 56.) Viewing this evidence in the light most favorable to Plaintiff, we conclude that it may  reflect a lack of concern for discrimination against nonwhites and a discomfort with discrimination allegations by white employees.  As it is undisputed that Wilkerson provided the account of the June 17 meeting on which Dr. Storey and Dr. Schwarz relied in making the decision to terminate Warenecki (Defs. Statement of Material Facts ¶¶ 30, 37), this evidence, together with the temporal proximity of Plaintiff's protected conduct and her termination, could allow a factfinder to conclude that the Health Department terminated Ms. Warenecki because she accused her supervisors of racial discrimination. Accordingly, we conclude that Plaintiff has established a prima facie case of retaliation.

2.      Defendants' Non-Retaliatory Explanation

Defendants argue that, even if Plaintiff has established a prima facie case of retaliation, they are entitled to summary judgment because they have proffered a legitimate, non-retaliatory explanation for Plaintiff's termination and Plaintiff cannot establish that the reason was a mere pretext for retaliation.  Defendants claim that Warenecki was terminated because "she revealed confidential information about another employee/patient and lied to her supervisors about possessing additional confidential records regarding other employees/patients."  (Defs. Mem. at 22.) Defendants' claim is supported by the July 21st memorandum (Def. Ex. 6), the Memorandum regarding Appeal of Recommended Disciplinary Action (Def. Ex. 12), the Notice of Suspension (Def. Ex. 13), the Notice of Intent to Dismiss (Def. Ex. 14), and the Notice of Dismissal (Def. Ex. 15).  Defendants have satisfied their burden of "advanc[ing] a legitimate, non-retaliatory reason for [their] conduct."  Moore, 461 F.3d at 342 (internal quotation omitted).

3.      Plaintiff's Evidence of Pretext

Since Defendants have articulated a legitimate, non-retaliatory reason for Plaintiff's termination, she must offer evidence that could "convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'"  Id. (quotation omitted).

Warenecki has testified that she did not reveal a co-worker's confidential medical records at the June 17 meeting.  (Pl.'s Dep. at 62-64, 79.)  Sutton similarly testified that Warenecki "absolutely did not do that." (Sutton Dep. at 16.)  While Defendants attack the credibility of both witnesses, we do not "resolve factual disputes or make credibility determinations" at summary

judgment.  <u>Seigel Transfer</u>, 54 F.3d at 1127 (citation omitted).  The credibility of Warenecki's and Sutton's testimony must be determined by a trier of fact.  If the trier of fact determines that Warenecki did not, in fact, pass around a co-worker's medical slip at the June 17 meeting, then "the trier of fact [could] reasonably infer from the falsity of the [Defendants'] explanation that the employer is dissembling to cover up a [retaliatory] purpose."  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147 (2000) (citation omitted).

Accordingly, we conclude that there exists a genuine issue of material fact as to whether Defendants' articulated justification for Plaintiff's termination is pretextual.  Therefore, we deny Defendants' Motion for Summary Judgment as to Count VI.

## IV.      CONCLUSION

For the foregoing reasons, Defendants are entitled to judgment as a matter of law on Plaintiff's § 1983 claims, and on Plaintiff's discrimination claim under Title VII.  Consequently, we grant Defendants' Motion for Summary Judgment as to Counts I, II, III, and V.  As there is a genuine issue of fact material to the resolution Plaintiff's retaliation claim under Title VII, we deny Defendants' Motion for Summary Judgment as to Count VI.

An appropriate order follows.